IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLAUDE ANDREW THOMAS, III,

        Petitioner,

    v.

MARK NOOTH,

        Respondent.

Case No. 2:13-cv-02148-SU

FINDINGS AND RECOMMENDATIONS

        Claude Andrew Thomas, III
        14907284
        Eastern Oregon Correctional Institution
        2500 Westgate
        Pendleton, OR 97801-9699

            Petitioner, *Pro Se*

        Frederick M. Boss, Deputy Attorney General
        Kristen E. Boyd, Assistant Attorney General
        Department of Justice
        1162 Court Street NE
        Salem, Oregon 97310

            Attorneys for Respondent

SULLIVAN, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions stemming from a sexual assault in 2006. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#59) should be denied.

## BACKGROUND

On July 28, 2006, petitioner was working at the Oregon State Hospital ("OSH") as part of an inmate work crew from the Mill Creek Correctional Institution. Petitioner entered a storage closet where an OSH nurse, HP, was searching for a soda for a patient. Petitioner violently assaulted HP in the closet, ripping her clothes, breaking her jewelry, biting her breast, and commanding her to "pant like a dog." Respondent's Exhibit 103, pp. 50-62. When HP refused to open her mouth to perform oral sex, petitioner hit her in the face with a closed fist which, she testified, chipped one of her teeth. *Id* at 60. Petitioner then sodomized HP.

HP was able to identify petitioner from a photographic lineup. As a result, the Marion County Grand Jury indicted petitioner on charges of Sodomy in the First Degree, Unlawful Sexual Penetration in the First Degree, Attempted Rape in the First Degree, Assault in the Fourth Degree, and three counts of Sexual Abuse in the First Degree. Respondent's Exhibit 102. Although petitioner claimed at trial that his encounter with HP was consensual, a jury ultimately convicted him of all seven charges, and the trial court sentenced him to 305 months in

prison.  The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review.  *State v. Thomas,* 228 Or. App. 757, 210 P.3d 945, *rev. denied*, 347 Or. 349, 222 P.3d 30 (2009).

Petitioner next filed for post-conviction relief ("PCR") in Malheur County where the PCR trial court denied relief on all of his claims.  Respondent's Exhibit 128.   The Oregon Court of Appeals affirmed the lower court's decision without opinion, and the Oregon Supreme Court denied review.  *Thomas v. Nooth,* 254 Or. App. 633, 296 P.3d 670, *rev. denied*, 353 Or. 534, 300 P.3d 1223 (2013).

Petitioner timely filed his original Petition for Writ of Habeas Corpus on December 6, 2013.   On August 17, 2015, petitioner filed his Amended Petition for Writ of Habeas Corpus in which he raises the following claims:

> 1.   The trial court violated petitioner's right to due process of law when it allowed a biased juror to remain on the jury;
>
> 2.   The trial court impermissibly allowed the prosecutor to vouch for the credibility of the alleged victim;
>
> 3.   Trial counsel rendered ineffective assistance when she failed to: (a) subpoena HP's dental records to show that the damage to her tooth was the result of decay, not petitioner striking her; (b) enter a medical report into evidence that did not show any physical evidence of a sexual assault; (c) argue that the DNA evidence, or lack thereof, did not support a conclusion of sexual assault; and (d) introduce evidence of a prior sexual assault involving the victim from 1998 that would have cast doubt on her credibility;

4.  The trial court's imposition of consecutive sentences violates petitioner's rights to due process, and the sentence is not commensurate with his crimes in violation of the Eighth Amendment;

5.  The trial court illegally enhanced petitioner's sentence under ORS 137.700 where it did not require a jury to make specific findings to justify a mandatory minimum sentence; and

6.  The trial court violated petitioner's right to due process when it accepted a non-unanimous guilty verdict.

Respondent asks the court to deny relief on the Amended Petition because: (1) Grounds One, Three(b), (c), (d), and Six are untimely insofar as they are new claims that were not contained within the original Petition; (2) with the exception of Ground Three(a), petitioner failed to fairly present any of his claims to Oregon's state courts, leaving them procedurally defaulted; and (3) the PCR trial court's decision denying relief on Ground Three(a) was neither contrary to, nor an unreasonable application of, clearly established federal law.

## DISCUSSION

### I.  Untimely Claims

Respondent does not dispute that petitioner timely filed this case, but asserts that petitioner filed his Amended Petition after the expiration of the Anti-terrorism and Effective Death Penalty Act's ("AEDPA's") one-year statute of limitations such that any new claims within that pleading are not properly before the court for consideration. *See* 28 U.S.C. § 2244(d)(1)(A) (imposing one-year statute of limitations on the filing of § 2254

habeas corpus cases).   It is clear from the record that petitioner timely filed his original Petition, but that he filed his Amended Petition well outside of AEDPA's one-year statute of limitations.   Between the conclusion of petitioner's PCR action on June 20, 2013 and the date on which he signed his original Petition (November 7, 2013), 140 untolled days elapsed. Importantly, the filing of petitioner's original Petition did not toll the limitation period.  *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).   As a result, he had 225 days in which to file his Amended Petition and timely raise any new claims he wished.   When he waited more than 20 months to file his Amended Petition, it was filed well outside of the AEDPA's one-year statute of limitations.

A new claim contained in an amended habeas corpus petition filed after the expiration of the AEDPA's one-year statute of limitations will only relate back to the timely-filed pleading if the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading.  *Mayle v.* Felix, 545 U.S. 644 (2005).  Relation back is permitted "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."  *Id* at 657.  If the new claim adds "a new legal theory tied to the same operative facts as those initially alleged," it will be sufficient to relate back to the original petition.  *Id* at 659, n. 5.

The record in this case reflects that Ground One of the Amended Petition relates to juror bias, something which is not at issue in any of the claims in the original Petition. Accordingly, Ground One does not relate back and should be dismissed as untimely.

In Grounds Three(b), (c), and (d), petitioner faults counsel for his failure to: (1) utilize a medical report by Dr. Robert B. Kelly as part of the defense; (2) point to the State's lack of DNA evidence; and (3) introduce evidence of a 1998 sexual assault involving the victim where she made similar allegations to those she levied against petitioner. Petitioner's claims of ineffective assistance of counsel in his original Petition did not include any of these claims, nor were any of his claims based upon the operative facts underlying Grounds Three(b), (c), and (d). Consequently, Grounds 3(b), (c), and (d) also do not relate back to the original Petition.

Finally, as Ground Six, petitioner challenges the trial court's decision to accept a non-unanimous jury decision in his case. Although respondent is correct that petitioner did not raise a claim of trial court error pertaining to his non-unanimous jury verdict, he did raise such a claim in terms of ineffective assistance of counsel. Petition (#2), p. 22 ("trial counsel failed to object or otherwise address the trial court's acceptance of a less than unanimous verdict"). Where the Amended Petition simply changes the theory underlying the same core of operative facts from ineffective assistance of counsel to

trial court error, the court finds that Ground Six relates back to the filing of the original Petition.

## II. **Exhaustion and Procedural Default**

Following the court's relation back analysis, petitioner's Grounds Two, Three(a), Four, Five, and Six of his Amended Petition remain. Respondent asserts that petitioner only fairly presented Ground 3(a) to Oregon's state courts so as to preserve it for federal habeas corpus review, and that Grounds Two, Four, Five, and Six are procedurally defaulted.

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

As Ground Two, petitioner alleges that the trial court impermissibly allowed the prosecutor to vouch for HP's credibility. Respondent asserts that, as a claim of ineffective assistance of counsel, the claim is procedurally defaulted.[1] The court's review of the Amended Petition reveals Ground Two to be one of trial court error. Where petitioner raised this claim for the first time on direct appeal as one involving plain error, Respondent's Exhibit 105, p. 4, and the Oregon Court of Appeals affirmed the decision of the trial court without opinion, the court considers this claim to be fairly presented. *See Smith v. Oregon Board of Parole and Post-Prison Supervision,* 736 F.3d 857 (2013) (affirmance without opinion on a claim raised as plain error constitutes an adjudication on the merits).

---

[1] Petitioner creates ambiguity in this claim by asking the court to reach the claim's merits via *Martinez v. Ryan,* 132 S.Ct. 1309, 1315 (2012), which generally serves to excuse the default of ineffective assistance of counsel claims that a PCR trial attorney failed to raise.

As Grounds Four and Five, petitioner alleges that the trial court was without authority to impose consecutive sentences, his mandatory minimum sentence violated his rights to due process and equal protection, and his aggregate sentence violates the Eighth Amendment.  Petitioner did not raise any such claims at the trial level.  However, with the exception of his Eighth Amendment challenge to the length of his sentence, petitioner raised these claims for the first time in the Oregon Court of Appeals.  As with Ground Two, petitioner acknowledged that these claims were unpreserved for appellate review, but asked the Oregon Court of Appeals to address the claims on their merits as plain error. Respondent's Exhibit 105, pp. 11, 13.  Pursuant to *Smith,* petitioner fairly presented these claims such that they are preserved for merits review.  However, where petitioner did not raise his Eighth Amendment claim to the Oregon Court of Appeals, he failed to fairly present it, leaving it procedurally defaulted and ineligible for merits review.

Finally, respondent asserts that petitioner failed to fairly present his Ground Six claim that the trial court erred when it allowed the jury to return a non-unanimous guilty verdict.  The court need not resolve this exhaustion issue because petitioner's claim lacks merit. *See Apodaca v. Oregon*, 406 U.S. 404 (1972) (upholding legality of non-unanimous juries); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

## III. **The Merits**

### A.   **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410.  The state court's

application of clearly established law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision. *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In this case, there is no rationale underlying the state courts' decisions denying petitioner's remaining claims. As a result, the court conducts an independent review of the record.

## B.    Ground Two: Improper Vouching

Petitioner argues that the trial court erred when it allowed the prosecutor to improperly vouch for the credibility of the victim during closing argument. It is clearly established federal law that a prosecutor may not vouch for the credibility of a witness. *United States v. Young*, 470 U.S. 1, 18 (1985). Improper vouching occurs when the prosecutor either: (1) expresses his or her personal belief in the veracity of the witness; or (2) the prosecutor implies to the jury that there is evidence not presented to it that supports the witness' credibility. *United States v. Brooks*, 508 F.3d 1205, 1209 (9th Cir. 2007). Where a prosecutor makes improper comments, a

petitioner may only prevail on his claim if the comments made his trial "so fundamentally unfair as to deny him due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).    However, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Id* at 647.

Petitioner points to several instances in the record where he claims the prosecutor made improper comments on the credibility of the victim during closing argument.    The court has independently reviewed the record and reproduced some portions thereof:

> In order to help you figure out who's telling you the truth it's important to not only listen to HP's testimony but to also think about the other evidence in the case, how we know that it's, in fact, HP who's credible. And there are a lot of things in this case that indicate that she is, in fact, truthful and credible and she is to be believed.

Respondent's Exhibit 104, pp. 249-50.

* * * * *

> Well, HP, probably most importantly, has absolutely no motive to lie, if you think about what HP has been through. She was sexually assaulted. She was questioned for hours.    Intimate questions, personal questions, sexual questions, embarrassing questions.

> She underwent a sexual assault examination. That means she went to the hospital. We heard testimony that photos, incredibly intimate photos, were taken of her vaginal area. She had to have standards taken. She had to have pubic hair plucked. She underwent that.

12 – FINDINGS AND RECOMMENDATIONS

> Why? What possible reason would you undergo
> hours of intimate questioning and a horrible
> sexual assault exam just to get this guy in
> trouble? She has no motive for this.

*Id* at 250-51.

\* \* \* \* \*

> From every single person who had contact with
> HP after this assault — you all saw a year
> after the assault she's still trembling,
> crying, humiliated, horrified and scared. We
> know from her reaction that she's credible
> and that she's to be believed.

*Id* at 253.

\* \* \* \* \*

> She tells us things that lend credibility to
> what happened, because there's just no other
> reason to add them to the story.
>
> She's honest about what she doesn't
> remember. . . . You heard from HP, who
> testified a year after this event, testifying
> entirely from memory, and she gave a lot of
> details, especially about the significant
> things that she remembered.
>
> She also didn't try to make things up. She
> didn't try to remember things that she
> didn't.
>
> She didn't try to lie to you. She didn't try
> to guess. She said, "I don't remember. I
> don't remember the first time I saw him on
> the 28th. I just remember different
> instances." She was honest about what she
> didn't remember. Lends credibility to her
> testimony.
>
> She was also honest during the investigation.
> I think it's very important for you to
> remember that she made sure that she was
> accurate to her detriment. She made sure to
> tell Nancy Johnston and Detective Ingraham
> that he only ripped her shirt part way; the
> rest of it she had done as she was wiping her
> face. She did that. She made sure that her

> report was as accurate as it could possibly
> be.
>
> She was telling the truth because she was so
> careful to make sure she was accurate.

*Id* at 253–55.

> * * * * *
>
> HP is, without a doubt, a credible,
> believable, truthful witness.   That alone
> gives you enough to convict the defendant of
> each and every charge.

*Id* at 257.

> * * * * *
>
> [Petitioner's] is the only testimony or only
> piece of evidence that contradicts anything
> of what HP told us.
>
> We know she is credible.  We know she has no
> reason to lie.  We know that she came in and
> told you the most horrible, embarrassing,
> humiliating, awful thing that's ever happened
> in her life.  And she deserves justice for
> that.

*Id* at 283.

A thorough review of the record reveals that while the prosecutor frequently commented on the credibility of HP during closing argument, she did so in terms of the evidence adduced at trial.  She did not imply that she could guarantee the witness' veracity either personally or on behalf of the State, nor did she suggest that HP was credible based upon information not presented to the jury.  To the contrary, she appropriately argued that the evidence adduced at trial showed HP was telling the truth about the assault.  Taken in context, the prosecutor's comments were not improper.

14 – FINDINGS AND RECOMMENDATIONS

C.   **Ground Three(a): Ineffective Assistance of Counsel**

Petitioner next asserts that his trial attorney was constitutionally ineffective when she failed to subpoena HP's dental records in order to show that the damage to her tooth was the result of decay, not a blow from petitioner's fist.  Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel.  *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance."  *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense.  The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial.  *Id* at 696. When *Strickland*'s general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result

is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

During petitioner's PCR trial, he introduced an affidavit from James L. Delgado, DDS, who gave his opinion that: (1) tooth decay, not trauma, caused the damage to HP's tooth; and (2) the red area under HP's eyes where she claimed petitioner struck her appeared to him to be a skin condition, not trauma. Respondent's Exhibit 123, pp. 1-2. During petitioner's PCR proceedings, he asserted that his trial attorney should have presented similar testimony from an expert witness so as to cast doubt on the credibility of HP.

HP testified that she did not notice the damage to her tooth until one or two days after petitioner attacked her. Respondent's Exhibit 103, p. 64. She attributed the damage to her tooth to petitioner's punch to her face, which caused her to bite down abruptly. *Id*. Even if petitioner's attorney could have subpoenaed medical records to show that the tooth had previously shown signs of decay, or might have introduced expert testimony similar to that of Delgado, the effect on the trial would have been *de minimis*.

Nurse Nancy Johnston claimed she found HP in the bathroom at the OSH, crying, shaking, sobbing, and clutching her broken necklace. *Id* at 92, 105-106. Even assuming the redness in HP's face was not attributable to a punch, and further assuming the damage to her tooth was due to decay, the evidence clearly showed

signs that petitioner had assaulted her, including HP's ripped clothing and the bite mark on her breast that was still present at the time of petitioner's trial. *Id* at 50-51, 63. All of this evidence corroborated HP's version of events. Had counsel presented evidence that HP's damaged tooth was likely the result of decay rather than blunt force trauma, it would not have altered the outcome of the trial as to any of petitioner's convictions.[2]   Accordingly, petitioner cannot prevail on his ineffective assistance of counsel claim.

### D.   Grounds Four and Five: Sentencing Errors

#### 1.   Consecutive Sentences

Petitioner challenges the legality of his sentence by asserting that all of his convictions arose out of a continuous and uninterrupted course of conduct such that he should have been given a 100-month sentence on either Unlawful Sexual Penetration in the First Degree or Sodomy in the First Degree, with all other sentences to run concurrently to the 100-month sentence. He claims the sentencing judge improperly imposed consecutive sentences because he did not like petitioner's attitude or the nature of his crimes.

The record reveals that petitioner received concurrent sentences for counts One through Three (Sex Abuse I), and consecutive sentences for counts Four (Sodomy I), Five (Unlawful Sexual Penetration I), Six (Attempted Rape I), and Seven (Assault

---

[2]   Petitioner's Assault IV conviction was predicated on his biting HP's

IV). The prosecution asserted that consecutive sentences on the latter counts were appropriate under ORS 137.123(5)(a)(b) because each of those crimes carried with it a separate harm. Respondent's Exhibit 104, pp. 312-13. The sentencing judge adopted this recommendation:

> You know, generally considered, the majority of murder cases there's a minimum of 25 years. And I thought since this didn't – it wasn't a murder, the sentence ought to be less than the 25 years for the crime he did. After listening to him, I think I'm wrong. With his attitude, he needs more of a sentence. With his attitude and with what he did to that lady, I'm adopting the DA's recommendation.

*Id* at 318-19.

Petitioner has not established that the nature of the crimes underlying his consecutive sentences did not, in fact, pose a separate harm to the victim so as to justify consecutive sentences under ORS 137.123. Once the State had established the propriety of consecutive sentences under the law, the imposition of such sentences was entirely within the discretion of the trial judge. ORS 137.123(5).

In addition, pursuant to *Smith,* the Oregon Court of Appeals reviewed this challenge to petitioner's sentence on the merits and affirmed the sentencing judge's decision, impliedly concluding that there was a valid justification under state law to impose consecutive sentences. It is not appropriate for a federal habeas court to second-guess issues of state sentencing

---

breast. Respondent's Exhibit 104, p. 313.

law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir.) ("a federal court is bound by the state court's interpretations of state law."), *cert. denied*, 531 U.S. 1037 (2000), citing *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Where petitioner's sentence was proper as a matter of state law, he cannot prevail on this claim.

### 2.    Legality of Mandatory Minimum Sentences

Petitioner's remaining challenge to his sentence arises out of the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), *Blakely v. Washington,* 542 U.S. 296 (2004), and *Harris v. United States,* 536 U.S. 545 (2002), where the Supreme Court generally determined that any fact used to elevate a defendant's sentence beyond the statutory maximum must be proven to a jury beyond a reasonable doubt. Petitioner contends that his mandatory minimum sentences imposed under Oregon's mandatory minimum sentencing statute, ORS 137.700, exceeded what his sentence would have been on the sentencing grid block. He therefore believes a jury was required to elevate his sentence beyond his presumptive grid block sentence. Not only is there no clearly established federal law to support this proposition, but the Ninth Circuit has concluded that mandatory minimum sentences are not unconstitutional in the wake of the Supreme Court cases

petitioner cites. *United States v. Decoud*, 456 F.3d 996, 1021 (9th Cir. 2006); United *States v. Dare*, 425 F.3d, 641 (9th Cir. 2005).

For all of the foregoing reasons, upon an independent review of the record, the Oregon state court decisions denying relief on petitioner's claims are neither contrary to, nor unreasonable applications of, clearly established federal law.

## IV.  Motion for Evidentiary Hearing

Also before the court is petitioner's Motion for Evidentiary Hearing (#87).  "A habeas petitioner must meet two conditions to be entitled to a federal evidentiary hearing: He must (1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." *Belmontes v. Brown*, 414 F.3d 1094, 1124 (9th Cir. 2005), *rev'd on other grounds sub nom. Ayers v. Belmontes*, 127 S. Ct. 469 (2006), *reh'g denied*, 127 S. Ct. 1042 (2007).  Where petitioner received a full and fair criminal trial as well as a full and fair PCR trial, an evidentiary hearing is not appropriate.

### RECOMMENDATIONS

For the reasons identified above, petitioner's Motion for Evidentiary Hearing (#87) and his Amended Petition for Writ of Habeas Corpus (#59) should be denied, and a judgment should be entered dismissing this case with prejudice.  The court should decline to issue a Certificate of Appealability on the basis that

petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

DATED this  19th  day of September, 2016.


      /s/Patricia Sullivan
      Patricia Sullivan
      United States Magistrate Judge